## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY PLANK, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO.    13-7337 |
| THE DEVEREUX FOUNDATION, | : | |
| THE DEVEREUX FOUNDATION LONG | : | |
| TERM DISABILITY PLAN, and AETNA | : | |
| LIFE INSURANCE CO., | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                    February 2, 2015

Currently pending before the Court is Plaintiff Mary Plank's Motion for Summary

Judgment.  For the following reasons, the Motion is granted in part and denied in part.

## I.    FACTUAL BACKGROUND

Plaintiff Mary Plank was hired by The Devereux Foundation ("Devereux") on February 1,

1993.  (Administrative Record ("A.R.") 502–03, 656.)  At the time of Plaintiff's disability onset,

she was the Director of Food Services for Devereux.  (Id.)  According to Plaintiff's description of

her job, she worked approximately fifty to sixty hours per week cooking approximately 700

meals, cleaning food stations, ordering supplies and food products, and managing other

employees.  (Id. at 219.)  She had a high stress level; was required to sit up to three hours per

day; stand between six and seven hours per day, which included walking between five and six

hours per day; lift items in excess of fifty pounds; frequently bend, stoop, kneel, and reach above

her shoulders; and occasionally crawl.  (Id.)  The job description provided by Devereux indicated

the following summary of the physical requirements for the position of Food Services Director: "Significant amounts of walking, sitting, and standing.  Some lifting required.  Some repetitive wrist/hand movements, normal hearing and vision.  Occasional use of computers and office equipment.  Occasional driving of Devereux vehicles for business purpose." (Id. at 670.)  Aetna was aware of both Devereux's official job description for Plaintiff's occupation and Plaintiff's description of her duties she performed as part of that occupation.  (Pl.'s Mot. Summ. J. ¶ 4; Def. Aetna's Resp. Opp'n Summ. J. ¶ 4.)

On July 12, 2007, Plaintiff stopped working for Devereux due to various medical injuries and conditions, and applied for long-term disability benefits ("LTD benefits") pursuant to Devereux's Long Term Disability Plan (the "Plan") with Aetna Life Insurance Company ("Aetna").  (A.R. 497–99, 505–14.)  Aetna administers the Plan, and the Plan gives Aetna complete discretionary authority to determine whether and to what extent Plan participants are entitled to benefits and to review all claims for denied benefits.  (Id. at 55.)  Aetna also insures the LTD benefits, which are funded through a Group Insurance Policy issued by Aetna.  (Pl.'s Mot. Summ. J. 6; Def. Aetna's Resp. Opp'n Summ. J. ¶ 6.)  At the time Plaintiff applied for LTD benefits, she was purportedly suffering from various medical conditions including chronic pain in the cervical area with radiation into the shoulder and upper extremities, chronic pain with radiation into the lower extremities, and chronic bilateral hip tendinopathy, as well as anxiety, depression, and psychological illness resulting from a 2003 motor vehicle accident.  (A.R. 540–73, 623–41.)  Concurrent with her application, Plaintiff was treating for these conditions with various providers including psychologist Dr. Janet Belitsky, pain management specialists Dr. Jeffrey Friedman, Dr. John Kraus, and Dr. Phillip Kim, and neurologist Dr. Leonard Geiger.

2

(Pl.'s Mot. Summ. J. ¶ 8; Def. Aetna's Resp. Opp'n Summ. J. ¶ 8.)

> The Plan provided as follows:
>
> With respect to all employees earning less than $60,000 a year:
>
> You will be deemed to be disabled on any day if you are not able to perform the **material duties** of your **own occupation** for more than half a day, solely because of disease or **injury**.  However, if you start work at any **reasonable occupation**, you will no longer be deemed to be disabled.
>
> After the first 60 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any **reasonable occupation solely because of:**
>
> • disease; or
> • **injury.**

(A.R. 3 (emphasis in original).)  The Plan defines "own occupation" as "the occupation that you are routinely performing when your period of disability begins."  (Id. at 15.)  "Reasonable occupation" is "any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 80% of your adjusted predisability earnings."  (Id.)

On November 12, 2007, Plaintiff was approved for LTD benefits retroactive to October 10, 2007.  (Id. at 699–701.)  Her LTD monthly benefit amount was $2,855.11, which was sixty percent of her monthly earnings.  (Id.)  In addition, on November 9, 2007, Aetna advised Plaintiff that based on its review of her file, Aetna believed Plaintiff "may be eligible for Social Security disability benefits."  (Id. at 1425.)  Plaintiff applied for Social Security benefits in April 2008, and was awarded such benefits in July 2008, in the amount of $1,357 per month retroactive to January 1, 2008.  (A.R. 1355; Pl.'s Mot. Summ. J. ¶¶ 12, 14; Def. Aetna's Resp. Opp'n Summ. J. ¶¶ 12, 14.)  As a result of this determination, Defendant reduced Plaintiff's LTD benefits to

$1,498.11 per month retroactive to January 1, 2008.  (A.R. 1354–61.)  Plaintiff continued to

receive LTD benefits at the reduced rate after January 1, 2008, and Aetna would periodically

investigate Plaintiff's receipt of benefits and conduct reviews of Plaintiff's ongoing medical care

and treatment.  (Pl.'s Mot. Summ. J. ¶ 16; Def. Aetna's Resp. Opp'n Summ. J. ¶ 16.)

        By letter dated June 5, 2012 ("Termination Letter"), Aetna advised Plaintiff that she was

no longer entitled to LTD benefits after June 5, 2012 because she was no longer totally disabled

from performing her "own occupation" as defined by the Plan.  (Pl.'s Mot. Summ. J., Ex. A.)

Specifically, the letter stated, in pertinent part as follows:

> We are writing to you regarding your Long Term Disability (LTD) benefits provided
> by your employer, Devereux, pursuant to a plan maintained under ERISA (Employee
> Retirement Security Act of 1974).  Based on our review, we are unable to continue
> your Long Term Disability benefit payments beyond June 5, 2012.
> . . .
> We have continued to evaluate your ability to perform the duties of your own
> occupation and whether you would be eligible to continue to receive benefits, and
> meet the definition of disability, own occupation, until 10/10/2012.
>  . . .
> Our Vocational Rehabilitation department evaluated the job description provided by
> your employer, Devereux, and was able to verify that your occupational requirements
> as a Food Service Manager for Devereux fell within the light, full time occupation
> definition.  In addition, it was also determined that there was a viable labor market
> for your functional work capacity in your geographical area, which verified that your
> occupation under the Dictionary of Occupational Titles (DOT) definition is light.
> The vocational assessment also determined you had transferrable skills that would
> allow you to perform at a sedentary occupation as well.  In the Transferrable Skills
> Analysis completed by our Vocational Rehabilitation department utilizing OASYS
> and research standard vocational resources such as the DOT, Occupational
> Information Network (O*NET) and Standard Occupational Classification (SOC)
> coding system along with your work experience, the Vocational Rehabilitation
> Specialist was able to identify seven occupations that are considered sedentary and
> fit your restrictions and limitations and work & educational history.
>
> In view of the above, we are terminating your claim for further disability benefits, as
> you are not totally disabled from your own occupation as defined by the contract.  No
> further benefits are payable to you after June 5, 2012.

(Id.)  The letter further acknowledged that the Dictionary of Occupational Titles defines a light occupation as "Lifting, Carrying, Pushing, Pulling 20 lbs. occasionally, up to 10 lbs. frequently, or negligible amount constantly.  Can include walking and/or standing frequently even though weight is negligible.  Can include pushing and/or pulling of arm and/or leg controls."  (Id.)  In making the determination that Plaintiff's job was light duty, Aetna relied upon Devereux's description of the physical requirements of the job.  (Id.; Def. Aetna's Resp. Opp'n Summ. J. ¶ 22.)

Prior to this June 5, 2012 determination that the position of Food Service Director was "light duty," Aetna had previously classified it as a "medium duty" job and communicated that determination to three of Plaintiff's physicians by way of letters sent between December 2011 and January 2012.  (Pl.'s Mot. Summ. J. ¶ 23; Def. Aetna's Resp. Opp'n Summ. J. ¶ 23; A.R. 947–48, 965–66, 984–85.)  Subsequently, Aetna's independent medical examiner ("IME") Dr. Michael Rosenthal opined, on May 3, 2012, that, due to her injuries/conditions, Plaintiff could only perform light duty work.  (A.R. 730–35.)  Five days after that report, Aetna sent another letter to Plaintiff's physician, Dr. Jeffrey Friedman, identifying Plaintiff's occupation as light duty and questioning whether Plaintiff could work an eight-hour day, forty-hour workweek, at light occupational level, as found by the IME.  (A.R. 727–28.)  Following the June 5, 2012 termination letter, Plaintiff's treating psychologist, Dr. Janet Belitsky, wrote a letter to Aetna indicating as follows:

> In light of the aforementioned areas of impairment pursuant to her injury, it is my opinion that Ms. Plank is deemed disabled from returning to Deveroux [sic] Foundation in any gainful capacity.  I will continue to follow Ms. Plank on a biweekly basis to provide mood and pain management strategies, coping skills, symptom management, and emotional support for her injury sustained in November

2002.  Ms. Plank's prognosis is unfavorable.

(A.R. 725–26.)

On July 6, 2012, Plaintiff filed a timely administrative appeal of Aetna's decision terminating her LTD benefits.  (Id. at 724.)  Aetna denied her appeal on October 2, 2012, finding that her medical impairments would not prevent her from performing the material duties of her own occupation, which was classified as a light physical demand level.  (Pl.'s Mot. Summ. J., Ex. B.)  Although Aetna acknowledged both Dr. Friedman's rejection of the IME findings and Dr. Belitsky's letter indicating Plaintiff's inability to work, Aetna rejected both opinions in favor of the Functional Capacity Evaluation ("FCE") and IME.  (Id.)

On December 16, 2013, Plaintiff initiated the current litigation alleging that Aetna arbitrarily and capriciously terminated her LTD benefits by (1) concluding that Plaintiff's "own occupation" as Food Service Director was a light duty position and (2) not considering all of her medical diagnoses.[1]  She also asserted that Aetna acted arbitrarily and capriciously when it determined that Plaintiff could perform any type of work, including light duty work.  Following the close of discovery, Plaintiff moved for summary judgment on November 5, 2014.  Defendant Aetna responded on November 25, 2014, making this case ripe for judicial consideration.

II.    STANDARD OF REVIEW

A.    **Summary Judgment Standard of Review**

---

[1]  Plaintiff also named the Devereux Foundation and the Devereux Foundation Long Term Disability Plan as Defendants, but, by Stipulation dated December 3, 2014, voluntarily dismissed these Defendants from the Complaint.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial,"

summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Moreover, the mere existence of

some evidence in support of the non-movant will not be adequate to support a denial of a motion

for summary judgment; there must be enough evidence to enable a jury to reasonably find for the

non-movant on that issue.  Anderson, 477 U.S. at 249–50.

**B.**      **Standard of Review of Benefits Denials Under ERISA**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States

Supreme Court held that, when evaluating challenges to denials of benefits in actions brought

under 29 U.S.C. § 1132(a)(1)(B), district courts are to review the plan administrator's decision

under a de novo standard of review, unless the plan grants discretionary authority to the

administrator or fiduciary to determine eligibility for benefits or interpret the terms of the plan.

Id. at 115.  Thus, when, as here, discretionary authority is given to an administrator of a plan, a

deferential standard of arbitrary and capricious is applied.[2]  Id. at 111; Estate of Schwing v. Lilly

Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); Kalp v. Life Ins. Co. of N. Am., No.

Civ.A.08–1005, 2009 WL 261189, at *1 (W.D. Pa. Feb. 4, 2009).  In such cases, a court may

overturn a plan administrator's decision only if that decision is "without reason, unsupported by

substantial evidence or erroneous as a matter of law."  Pinto v. Reliance Standard Life Ins. Co.,

214 F.3d 377, 387 (3d. Cir. 2000) (quotations omitted), abrogated on other grounds, Schwing,

562 F.3d at 525; see also Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1141 (3d Cir. 1993)

("[W]hen the arbitrary and capricious standard applies, the decision maker's determination to

deny benefits must be upheld unless it was 'clear error' or 'not rational.'") (internal quotation

---

[2] Aetna asserts, and Plaintiff does not disagree, that the Plan at issue grants Aetna
discretionary authority to administer the Plan.

omitted).  "The scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" <u>Doroshow v. Hartford Life & Accident Ins. Co.</u>, 574 F.3d 230, 234 (3d Cir. 2009) (quoting <u>Abnathya v. Hoffman–La Roche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993)); <u>see also</u> <u>Howley v. Mellon Fin. Corp.</u>, 625 F.3d 788, 793 (3d Cir. 2010); <u>Brown v. First Reliance Standard Life Ins. Co.</u>, No. Civ.A.10–486, 2011 WL 1044664, at *5 (W.D. Pa. Mar. 18, 2011).  Such a deferential review "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than costly litigation."  <u>Conkright v. Frommert</u>, 559 U.S. 506, 517 (2010).

On a motion for summary judgment in an ERISA case where the plaintiff claims that benefits were improperly denied, a reviewing court is generally limited to the facts known to the plan administrator at the time the decision was made.  <u>Post v. Hartford Ins. Co.</u>, 501 F.3d 154, 168 (3d Cir. 2007), <u>overruled on other grounds</u>, <u>Doroshow</u>, 574 F.3d 230.  "Consequently, when, as here, a plaintiff alleges that a plan administrator, such as [Aetna], abused its discretion in deciding to terminate benefits, [the Court] generally limit[s] [its] review to the administrative record, that is, to the 'evidence that was before the administrator when [it] made the decision being reviewed.'"  <u>Sivalingam v. Unum Provident Corp.</u>, 735 F. Supp. 2d 189, 194 (E.D. Pa. 2010) (quoting <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 440 (3d Cir. 1997)); <u>see also</u> <u>Johnson v. UMWA Health & Ret. Funds</u>, 125 F. App'x 400, 405 (3d Cir. 2005) ("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the Plan administrator, which cannot be supplemented during the litigation.").

III.     **DISCUSSION**

      Plaintiff alleges that Aetna acted arbitrarily and capriciously in (1) terminating her benefits under the "own occupation" provision of the Plan; and (2) concluding that Plaintiff could perform light duty work for purposes of the "any reasonable occupation" ("any occupation") provision of the policy.  The Court addresses each argument separately.

      **A.     <u>Termination of Benefits Under the "Own Occupation" Provision of the Plan</u>**

      Plaintiff's initial argument contends that Aetna's termination of benefits under the "own occupation" provision of the Plan was arbitrary and capricious for two reasons.  First, Plaintiff asserts that Aetna erroneously and arbitrarily determined that Plaintiff's "own occupation" was a light duty job.  Second, Plaintiff avers that, when terminating her benefits, Aetna failed to address all of her documented medical conditions.

      In its Response to Plaintiff's Motion for Summary Judgment, Aetna states as follows:

> Aetna acknowledges this Court may reasonably find that this re-classification, in light of the totality of the circumstances presented, raises a genuine issue as to whether Aetna abused its discretion when it found that Plaintiff was capable of performing the material duties of her <u>own occupation</u>, as re-classified to light duty.  Accordingly, Aetna does not seek to call upon this Court to engage in the fact-intensive and time-consuming factual and legal analysis of Aetna's <u>own occupation</u> claim determination.

(Def. Aetna's Resp. Opp'n Summ. J. 12.)  In accordance with this concession, Aetna asks the Court to enter an Order granting Plaintiff's Motion for Summary Judgment as to liability and damages owed under the "own occupation" provision of the Plan and directing Aetna to pay to Plaintiff benefits owed under that provision for the period of June 6, 2012 through October 10, 2012.  (Def. Aetna's Proposed Order Opp'n Summ. J.)

      Consistent with Aetna's lack of opposition on this point, the Court finds that Plaintiff is

entitled to summary judgment with respect to her argument under the "own occupation" provision of the Plan.  In turn, the Court shall grant Plaintiff's Motion on this ground and order that Aetna pay her benefits for the period of June 6, 2012 (the date her benefits were terminated) through October 10, 2012 (the date her benefits under the "own occupation" provision would have expired).

**B.**      **Denial of Benefits Under the "Any Occupation" Provision of the Plan**

Plaintiff's second argument contends that Aetna acted arbitrarily in concluding that she could perform light duty work, thereby precluding her from obtaining benefits under the "any occupation" provision of the Plan.   Specifically, she challenges Aetna's failure to consider the "overwhelming medical evidence" that she had substantial limitations due to both her physical impairments and her ongoing mental impairments.  (Pl.'s Mem. Supp. Mot. Summ. J. 24.)

Under the Plan language, "[a]fter the first 60 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of: disease; or injury."  (A.R. 3 (emphasis omitted).)  The Plan defines "[r]easonable occupation" as "any gainful activity for which you are; or may reasonably become; fitted by: education; training; or experience; and which results in; or can be expected to result in; an income of more than 80% of your adjusted predisability earnings."  (Id.)

Aetna now argues that it made no decision as to whether Plaintiff was able to work at any reasonable occupation because of her disease or injury.  Rather, the only determination that Aetna made was that Plaintiff was no longer entitled to benefits for the time period remaining under the "own occupation" provision of the Plan.  Aetna explains that in order to make a

11

determination under the "any occupation provision," it must (1) determine what level of physical demand Plaintiff was capable of performing and whether there were any restrictions or limitations on that level; (2) consider whether Plaintiff has any transferrable skills; and (3) research and investigate whether there are suitable occupations in Plaintiff's labor market that satisfy the physical demand level and/or can accommodate any such restrictions and limitations deemed reasonable by Aetna.  In addition, Aetna must determine if any such occupations would result in income of more than 80% of Plaintiff's predisability earnings.  According to Aetna, however, it has not conducted any such analysis.  Accordingly, there is no record by which this Court can conduct any review as to the arbitrariness and capriciousness of such a nonexistent decision.

Arguably, a reasonable reading of the termination letter could suggest that Aetna not only determined that Plaintiff could perform her own occupation, but also concluded that Plaintiff was not disabled under the "any occupation" provision.  Specifically, the termination letter made reference to Plaintiff's supposed ability to work in another reasonable occupation, as follows:

> In addition, it was also determined that there was a viable labor market for your functional work capacity in your geographical area, which verified that your occupation under the Dictionary of Occupational Titles (DOT) definition is light. The vocational assessment also determined you had transferrable skills that would allow you to perform at a sedentary occupation as well.  In the Transferrable Skills Analysis completed by our Vocational Rehabilitation department utilizing OASYS and research standard vocational resources such as the DOT, Occupational Information Network (O*NET) and Standard Occupational Classification (SOC) coding system along with your work experience, the Vocational Rehabilitation Specialist was able to identify seven occupations that are considered sedentary and fit your restrictions and limitations and work & educational history.

(Pl.'s Mot. Summ. J., Ex. A.)

Nonetheless, it is abundantly clear that Aetna's termination of Plaintiff's benefits was

decided solely under the "own occupation" provision.  The termination letter unequivocally

stated:

> We have continued to evaluate your ability to perform the duties of your own
> occupation and whether you would be eligible to continue to receive benefits, and
> meet the definition of disability, **own occupation**, until 10/10/2012.
> . . .
> In view of the above, we are terminating your claim for further disability benefits, **as
> you are not totally disabled from your own occupation** as defined by the contract.
> No further benefits are payable to you after June 5, 2012.

(Id. (emphasis added).)  Thereafter, in the denial of appeal letter, Aetna cited only to the "own

occupation" disability standard, and then explained:

> Our records show the first date you were absent from work was July 12, 2007, and
> your benefits were approved through June 5, 2012.  Your LTD benefits were
> terminated as of June 6, 2012, as it was determined that the medical information in
> your file did not support functional impairment that would prevent you from
> performing the material duties of your **own occupation** of Food Service Director,
> which is classified as a light physical demand level occupation.

(Pl.'s Mot. Summ. J., Ex. B (emphasis added).)

More importantly, the record is devoid of a clear decision by Aetna under the "any

occupation" provision, making judicial review of such a decision impossible.  This Court

confronted a similar scenario in Branca v. Liberty Life Assur. Co. of Boston, No. Civ.A.13-740,

2014 WL 1340604 (E.D. Pa. Apr. 3, 2014).  Specifically, the defendant in Branca filed a motion

for summary judgment requesting that if the court found that defendant "abused its discretion in

denying the plaintiff's claim for benefits during the 'Own Occupation' period, any retroactive

benefits should 'not extend beyond the time period ending on March 13, 2013' and further

request[ed] that the Court 'remand this matter to [defendant] for further administrative review

and determination' as to Plaintiff's claim under the 'Any Occupation' provision of the policy."

13

Id. at *16.  The plaintiff responded that remand was inappropriate as the defendant should have "considered the plaintiff's eligibility for both her 'own occupation' benefits for the appropriate period and 'any occupation' benefits thereafter" when first considering her claim." Id.  The Court agreed with the defendant's approach, reasoning as follows:

> Bearing in mind the high "abuse of discretion" standard applicable in this case, and recognizing that the Court's review has been confined to Liberty Life's analysis under the "Own Occupation" provision of its policy, the Court will not address the question of whether Plaintiff is entitled to benefits under the "Any Occupation" provision of the policy.  Instead, the Court finds Plaintiff entitled to benefits under the "Own Occupation" provision retroactive for the period running from March 13, 2011 through March 13, 2013.  In accordance with the reasoning of this Opinion, the Court will remand the case to Liberty Life for: (1) consideration of the amount owed to Plaintiff; and (2) determining whether Plaintiff is entitled to benefits under the "Any Occupation" provision of the policy.

Id.

The same holds true in this case.  Aetna has already conceded its error in terminating Plaintiff's benefits under the "own occupation" provision.  Nonetheless, the record clearly reflects that Aetna never rendered a decision as to whether Plaintiff was disabled under the "any occupation" provision.  As noted above, a court may overturn a plan administrator's decision only if that decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto, 214 F.3d at 387.  "The scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" Doroshow, 574 F.3d at 234 (quoting Abnathya, 2 F.3d at 45 (3d Cir. 1993)).  Given this standard, it would be highly improper for this Court—absent any clear decision from Aetna on this issue—to render its own determination as to the extent of Plaintiff's disability and whether she had the capacity to perform any reasonable occupation despite her existing medical

14

conditions.  Accordingly, the Court will remand the matter back to Aetna for consideration of whether Plaintiff is entitled to benefits under the "any occupation" provision.  Should Plaintiff disagree with that decision, or with any decision rendered on administrative appeal, she retains the right to again seek a judicial ruling as to the reasonableness of that decision.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted in part.  With respect to the termination of her benefits under the "own occupation" provision, the Motion is granted and Defendant shall pay to Plaintiff benefits owed under that provision for the period from June 6, 2012 to October 10, 2012.  With respect to whether Plaintiff is entitled to ongoing benefits under the "any occupation" provision of the plan, the case is remanded to Aetna for determination as to whether Plaintiff meets the requirements of that provision.

An appropriate Order follows.